65140-5/skw[20457554]

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ATLANTIC HOUSING PARTNERS, L.L.L.P.,
COVINGTON CLUB, L.L.L.P., CPG
CONSTRUCTION, L.L.L.P.,

        Plaintiffs,

vs.

CITY OF OVIEDO,

        Defendant.

_____/

CASE NO. 6:09-cv-769-ORL-22KR

**Dispositive Motion**

### DEFENDANT'S AMENDED MOTION FOR SUMMARY FINAL
### JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

Defendant, CITY OF OVIEDO, by and through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby files its Amended Motion for Summary Final Judgment With Incorporated Memorandum of Law, and states:

There are no genuine issues of material fact and Defendant is entitled to summary final judgment in its favor and against Plaintiffs as a matter of law.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Defendant contends that the following facts are not in dispute.  This is an alleged housing discrimination case.  In their Third Amended Complaint (the "Complaint") [Doc. 51], Plaintiffs, Atlantic Housing Partners, L.L.L.P. ("Atlantic Housing Partners"), Covington Club, L.L.L.P. ("Covington Club Partners") and CPG Construction, L.L.L.P. ("CPG") (collectively "Plaintiffs"), allege that the Defendant, through its City Council, violated the

CASE NO. 6:09-cv-769-ORL-22KRS

Federal Fair Housing Act (Counts I and III) and the Florida Fair Housing Act (Counts II and IV) by passing Resolution No. 776-04 (the "Resolution") [Doc. 51-2] approving the Conceptual Development Plan ("CDP") for the Covington Club planned unit development ("PUD"), subject to several conditions, including Condition No. 9, which provides, "[p]ermissible uses … shall be limited to townhouses, condominiums, or other owner-occupied housing" (the "owner-occupied use condition"). *See* Doc. 51 at ¶¶ 36, 38, 39, 44, 45, 47, 48, 49, 54, 61, 62 and 68.  Covington Club Partners owns the parcel of land near the intersection of S.R. 434 and Chapman Rd. in Oviedo, FL (the "subject parcel") upon which the PUD is to be developed. *See* Doc. 51 at ¶9.  Atlantic Housing Partners seeks to develop a multi-family housing community to be called Covington Club as part of the PUD on the subject parcel. *See* Doc. 51 at ¶8.  CPG serves as the general contractor for the construction of Covington Club. *See* Doc. 51 at ¶10.  The CDP provided that the subject parcel would be developed with both residential and commercial uses. *See* Doc. 51-3 at p.1.

The Resolution, which was passed by the City Council of the City of Oviedo, Florida ("City Council") on January 5, 2004, and its owner-occupied use condition are incorporated by reference into a Development Agreement [Doc. 51-3] which Covington Club Partners and The City of Oviedo entered into on July 16, 2007. *Id.*  The Development Agreement was prepared by Plaintiffs' prior counsel, Matthew Smith, Esq. of Akerman Senterfitt. *Id.*

The owner-occupied use condition originated during a public hearing of the Land Planning Agency of the City of Oviedo, Florida ("LPA") on December 18, 2003. *See* Exhibit 1 at pp. 3-4.  Mr. Smith represented Covington Club Partners at that hearing and requested the LPA to approve the CDP for Covington Club. *See* Exhibit 1 at p. 2.  During the hearing,

CASE NO. 6:09-cv-769-ORL-22KRS

LPA member, Steve Edmonds, made a motion recommending approval to the City Council of the Covington Club CDP with several conditions which are not at issue in this case.  *See* Exhibit 1 at pp. 3-4.   J.R. Ball, Chairman of the LPA, subsequently made a friendly amendment to the motion consisting of additional conditions, including a condition that "[t]he development should be limited to townhouses or something that is ownership-orientated."  *See* Exhibit 1 at p. 4.  Mr. Ball asked Mr. Smith if he would agree to each of the conditions, and Mr. Smith acknowledged and agreed to each of the conditions, including the aforementioned condition that the development be "limited to townhouses or something that is ownership-orientated."  *Id.*  The motion recommending approval to the City Council of the Covington Club CDP, with conditions, including the condition that the development be "limited to townhouses or something that is ownership-orientated," carried by a vote of 5-0. *See* Exhibit 1 at p. 5.

The City Council met in regular session on January 5, 2004 and conducted a public meeting regarding the Resolution.  *See* Exhibit 2 at p.1 and Doc. 51-2 at p. 1. Mr. Smith also represented Covington Club Partners at the City Council meeting.  *See* Exhibit 2 at p. 2. During the City Council meeting, Mr. Smith requested that the owner-occupied use condition be removed from the Resolution.  *See* Exhibit 3 at p. 49, lines 14-15.  He argued, inter alia, that, "it [the owner-occupied use condition] may be contrary to the Federal Fair Housing Act….we are talking about a potentially discriminatory act…."  *See id.* p. 50, line 17 – p. 51, line 2.  On the other hand, Mr. Smith also represented to the City Council that his client had discussions with Pulte, which wanted to purchase the residential portion of the Covington Club PUD, and that Pulte had issued a letter of intent to develop townhomes or

CASE NO. 6:09-cv-769-ORL-22KRS

condominiums on the subject parcel. *See id.* at p. 49, lines 14-25. The City Council passed

the Resolution, including the owner-occupied use condition, by a vote of 4-1. *See* Exhibit 2

at p. 4.

Plaintiffs did not appeal the passage of the Resolution.[1]  In fact, Plaintiff failed to

avail themselves of multiple available remedies after the passage of the Resolution.[2]  Instead

---

[1]  The City Council's passage of the Resolution was a quasi-judicial action of an agency, board or commission of local government appealable to the Circuit Court in and for the Eighteenth Judicial Circuit, which would have had common law certiorari and original jurisdiction pursuant to Rules 9.030(c)(3) and 9.100 (c)(2) of the Florida Rules of Appellate Procedure, which provide, in pertinent part:

> Rule 9.030 Jurisdiction of Courts
>
> (c) Jurisdiction of Circuit Courts.
> (1) . . .
> (2) . . ..
> (3) Original Jurisdiction.  Circuit courts may issue writs of mandamus, prohibition, quo warranto, common law certiorari, and habeas corpus, and all writs necessary to the complete exercise of the courts' jurisdiction.

(footnotes omitted).

> RULE 9.100. ORIGINAL PROCEEDINGS
> (c) Exceptions; Petitions for Certiorari; Review of Non-Final Agency Action. The following shall be filed within 30 days of rendition of the order to be reviewed:
>
>> (2) A petition to review quasi-judicial action of agencies, boards, and commissions of local government, which action is not directly appealable under any other provision of general law but may be subject to review by certiorari.

The untimely filing of an appeal precludes an appellate court from exercising jurisdiction. *Bridges v. State*, 863 So.2d 366 (Fla. 5th DCA 2003); *State Farm Insurance v. Open MRI of Orlando*, 780 So.2d 339 (Fla. 5th DCA 2001); *Peltz v. District Court of Appeal, Third District*, 605 So. 2d 865 (Fla. 1992); *Hawks v. Walker*, 409 So.2d 524 (Fla. 5th DCA 1982); *Pitts v. State*, 225 So.2d 352 (Fla. 1st DCA 1969).  Further, subject-matter jurisdiction cannot be conferred by waiver or consent. *Board of Trustees of Internal Improvement Trust Fund v. Mobil Oil Corp.*, 455 So.2d 412 (Fla. 2d DCA 1984), approved in part, quashed in part on other grounds, 492 So.2d 339 (Fla. 1986), *cert. denied*, 479 U.S. 1065, 107 S. Ct. 950, 93 L. Ed. 2d 999 (1987); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. State*, 295 So.2d 314 (Fla. 1st DCA), *cert. denied*, 303 So.2d 644 (Fla. 1974).  The pertinent jurisdictional and procedural rules are Article V, Section 5(b), Constitution of the State of Florida; Rule 9.030(c)(3), Florida Rules of Appellate Procedure and Rule 1.630, Florida Rules of Civil Procedure.

[2]  Plaintiffs failed to avail themselves of a remedy under the Bert Harris Act.  The Florida Constitution and the Florida Legislature through its legislative actions (*see, e.g.*, Chapter 70, Florida Statutes, and Section

CASE NO. 6:09-cv-769-ORL-22KRS

of appealing or otherwise contesting the Resolution after its passage, approximately three and one half years later Covington Club Partners entered into the Development Agreement with the City of Oviedo, which incorporated the Resolution and its owner-occupied use condition by reference.  *See* Exhibit 4.

On or about April 13, 2009, Plaintiffs, by and through their current counsel, wrote a letter to the City of Oviedo, through the City Attorney, requesting the removal of the owner-occupied use condition from the Resolution and Development Agreement (the "letter request").  [Doc. 37-5].  The City of Oviedo took no official action with respect to the letter request as it was tendered in a manner that, if acted upon, would not have been in accordance with controlling principles of Florida law relating to quasi-judicial land use decisions issued by local governments.

**B.      Procedural Background**

On or about May 5, 2009, more than five years after the City of Oviedo's passage of the Resolution containing the owner-occupied use condition and nearly two years after

---

187.201(15), Florida Statutes) evidence the strong and long-protected public policy of the State to protect private property rights and ensure that local governments and other regulatory agencies act only in such ways as to protect private property owners from unreasonable governmental regulation.

The Bert J. Harris, Jr., Private Property Rights Protection Act was enacted by the Florida Legislature in 1995 to establish a civil action separate and distinct from the law of takings.  The Legislature specifically recognized that governmental entities often take actions that limit uses of real property, but that the actions frequently do not rise to the level of a taking under the United States Constitution or The Constitution of the State of Florida.

The Harris Act provides relief to property owners when an action of a governmental entity has placed an inordinate burden on the existing uses or vested rights to specific uses of real property.  The provisions of the Harris Act are cumulative and do not abrogate other lawfully available remedies, specifically including those provided for governmental actions that constitute takings.

After the Resolution approving the Covington Club CDP was passed on January 5, 2004, Plaintiffs also failed to submit to the City of Oviedo an application to amend the Covington Club CDP to remove the owner-occupied use condition.

CASE NO. 6:09-cv-769-ORL-22KRS

Covington Club Partners and the City of Oviedo entered into the Development Agreement, Plaintiffs, Atlantic Housing Partners and Covington Club Partners, filed their original Complaint [Doc. 1]. On July 6, 2009, Plaintiffs, Atlantic Housing Partners and Covington Club Partners, filed their First Amended Complaint [Doc. 17]. On November 16, 2009, Plaintiffs, Atlantic Housing Partners and Covington Club Partners, filed their Second Amended Complaint [Doc. 37]. On December 1, 2009, Defendant filed its Answer and Affirmative Defenses to the Federal and Florida Fair Housing Act claims alleged in the Second Amended Complaint [Doc. 40]. On December 15, 2009, Defendant filed its Amended Answer and Affirmative Defenses to the Federal and Fair Housing Act claims alleged in the Second Amended Complaint. [Doc. 44].

On December 16, 2009, the Court held a Case Management Conference pursuant to Plaintiffs' and Defendant's joint request for a Case Management Conference and joint request for an expedited trial date in February 2010. Following the Case Management Conference, Plaintiffs and Defendant stipulated to a non-jury trial in February 2010. On December 17, 2009, the Court entered an Order [Doc. 46] granting Plaintiffs, Atlantic Housing Partners and Covington Club Partners, leave to file a Third Amended Complaint adding a new Plaintiff within 5 days of the date of the entry of the Order. On December 17, 2009, the Court entered its Amended Case Management and Scheduling Order [Doc. 48] requiring Defendant to file its Motion for Summary Final Judgment on or before December 18, 2009. Defendant filed its Motion for Summary Final Judgment with Incorporated Memorandum of Law [Doc. 50] at 4:41 PM EST on December 18, 2009. At the date and time Defendant filed its Motion for Summary Final Judgment with Incorporated

CASE NO. 6:09-cv-769-ORL-22KRS

Memorandum of Law [Doc. 50], the Second Amended Complaint was the operative Complaint.  At 5:57 PM EST on December 18, 2009, Plaintiffs filed their Third Amended Complaint (the "Complaint") [Doc. 51] naming CPG as a new Plaintiff.  On December 22, 2009, Defendant filed its Amended Answer and Affirmative Defenses to Plaintiffs' Third Amended Complaint [Doc. 53].  Defendant files this Amended Motion for Summary Final Judgment with Incorporated Memorandum of Law in response to Plaintiffs' Third Amended Complaint [Doc. 51].

Count I of the Complaint is a cause of action for compensatory damages for violation of the Federal Fair Housing Act; Count II is a cause of action for compensatory damages for violation of the Florida Fair Housing Act; Count III is a cause of action for injunctive relief for violation of the Federal Fair Housing Act; and Count IV is a cause of action for injunctive relief for violation of the Florida Fair Housing Act.

In their Complaint, Plaintiffs allege that Defendant, through its City Council, violated the Federal and Florida Fair Housing Acts by imposing the owner-occupied use condition on the Covington Club CDP and Plaintiffs notwithstanding that Mr. Smith agreed to an ownership oriented condition at the LPA meeting in December 2003; notwithstanding that Mr. Smith represented to the Oviedo City Council on January 5, 2004 that Pulte wanted to purchase the residential portion of the Covington Club PUD, and that Pulte had issued a letter of intent to develop townhomes or condominiums on the subject parcel; notwithstanding that Plaintiffs did not appeal the passage of the Resolution; and notwithstanding that Covington Club Partners entered into the Development Agreement with the City of Oviedo on July 16, 2007, which incorporated the owner-occupied use condition by reference.

CASE NO. 6:09-cv-769-ORL-22KRS

II.   **ARGUMENT**

    A.   **Counts I through IV of the Complaint Are Barred Pursuant to the Doctrine of Waiver**

        1.   **Plaintiffs knowingly and intentionally waived their rights under the Federal and Florida Fair Housing Acts**

A waiver is an intentional relinquishment or abandonment of a known right.  *See U.S. v. Olano*, 507 U.S. 725 (1993).  One can waive any contractual, statutory or constitutional right.  *See Kilpatrick v. McLouth*, 392 So. 2d 985 (Fla. 5th DCA 1981).  In the context of alleged housing discrimination, the statutory rights created under the Federal Fair Housing Act can be waived if such waiver is knowing and intentional.  *See Housing Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condominium Assoc.*, 510 F. Supp. 2d 1003 (S.D. Fla. 2007).  Waiver can be express or implied, and can be shown through conduct or acts that warrant an inference that a known right has been relinquished.  *See Bush v. Ayer*, 728 So. 2d 799, 801 (Fla. 4th DCA 1999); *Taylor v. Kenco Chemical & Mfg. Corp.*, 465 So. 2d 581, 587 (Fla. 1st DCA 1985); and *BP Products North America, Inc. v. Oak Ridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1134 ( M.D. Fla. 2007).

In their Complaint, Plaintiffs allege that Defendant violated the Federal and Florida Fair Housing Acts when it imposed the owner-occupied use condition on the Covington Club CDP and Plaintiffs.  *See* Doc. 51 at ¶¶39, 48.  However, Plaintiffs, by and through their counsel, Matthew Smith, Esq., agreed to an owner-oriented use condition at the LPA meeting in December 2003.  *See* Exhibit 1 at p.4.  Subsequently, Plaintiffs failed to appeal the passage of the Resolution containing the owner-occupied use condition or avail themselves of other remedies as discussed *supra*.  Then, in July 2007, Covington Club Partners entered into the

CASE NO. 6:09-cv-769-ORL-22KRS

Development Agreement, which incorporated the owner-occupied use condition by reference. *See* Doc. 51-3 at p.1. Mr. Smith's agreement to an owner-oriented use condition at the LPA meeting in December 2003; Plaintiffs' failure to appeal the passage of the Resolution containing the owner-occupied use condition; and Covington Club Partners' act of entering into a Development Agreement with the City of Oviedo, which incorporated the owner-occupied use condition by reference, constituted Plaintiffs' waiver and relinquishment of their rights under the Federal and Florida Fair Housing Acts. At a minimum, such conduct and actions on the part of Plaintiffs warrant an inference that they relinquished their rights under the Federal and Florida Fair Housing Acts.

Moreover, Plaintiffs' waiver and relinquishment of their rights under the Federal and Florida Fair Housing Acts was knowing and voluntary. During the City Council Meeting in January 2004, Mr. Smith, on behalf of Plaintiffs, acknowledged Plaintiffs' rights under the Federal Fair Housing Act, and argued that the owner-occupied use condition may be contrary to those rights. *See* Exhibit 3 at p. 50, line 17 – p. 51, line 2. Mr. Smith stated, "it [the owner-occupied use condition] may be contrary to the Federal Fair Housing Act….we are talking about a potentially discriminatory act…." *Id.* While the City of Oviedo respectfully disagrees that the owner-occupied use condition is discriminatory or runs afoul of the Federal and Florida Fair Housing Acts, Mr. Smith's argument at the City Council meeting demonstrates Plaintiffs' knowledge of their rights under the Federal and Florida Fair Housing Acts. Plaintiffs' subsequent failure to appeal the passage of the Resolution containing the owner-occupied use condition and voluntary act of entering into the Development

CASE NO. 6:09-cv-769-ORL-22KRS

Agreement, which incorporated the owner-occupied use condition by reference, constitutes a knowing an intentional waiver and relinquishment of those rights.

**B.      Counts I through IV of the Complaint Are Barred Pursuant to the Doctrine of Equitable Estoppel**

      **1.      The City of Oviedo relied to its detriment upon Plaintiffs' misrepresentations that they agreed to the owner-occupied use condition.**

An equitable estoppel defense may be asserted by showing a misrepresentation of a material fact by the party being estopped, which is contrary to a later asserted representation by that party, reliance on that representation by the party claiming estoppel, and a detrimental change in position of the party claiming estoppel caused by that party's reliance on the misrepresentation. *Spoerr v. Manhattan Nat'l Life Ins. Co.*, 2007 WL 128815 *5 (S.D. Fla.) (quoting *Lennar Homes Inc., v. Gabb Const. Services, Inc.*, 654 So. 2d 649, 651 (Fla. 3d DCA 1995).  In the case at bar, Plaintiffs should be estopped from asserting their rights under the Federal and Florida Fair Housing Acts pursuant to the doctrine of equitable estoppel.

Covington Club Partners, through its attorney, Mr. Smith, made a misrepresentation of material fact when Mr. Smith acknowledged and agreed to an ownership-oriented use condition at the LPA meeting in December 2003.  Mr. Smith's agreement to an ownership-oriented use condition before the LPA was contrary to the representations which he made to the City Council when he objected to the owner-occupied use condition at the City Council meeting in January 2004.

Similarly, Covington Club Partners represented its agreement to the owner-occupied use condition by failing to appeal the passage of the Resolution in 2004, and again in July 2007, when it entered into the Development Agreement with the City of Oviedo.  These

misrepresentations were contrary to the representations Plaintiffs made through their current counsel when they requested the removal of the owner-occupied use condition from the Resolution in their letter request of April 13, 2009. The City of Oviedo relied to its detriment upon the aforementioned misrepresentations of Plaintiffs by entering into the Development Agreement. As a result, Plaintiffs' Federal and Fair Housing Act claims in Counts I through IV of the Complaint should be barred pursuant to the doctrine of equitable estoppel.

### C.   Counts I through IV of the Complaint Are Barred Pursuant to the Doctrine of Laches

Counts I through IV should be barred pursuant to the doctrine of laches. Laches is an equitable defense, which bars a Plaintiff from maintaining a suit if he unreasonably delays filing a suit and as a result harms the defendant. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002) (quoting *Kansas v. Colorado*, 514 U.S. 673, 687 (1995)). The defense requires proof of lack of diligence by the party against whom the defense is asserted and prejudice to the party asserting the defense. *Id.* at 122. Under Florida law, to establish the defense of laches, the defendant must prove conduct by the defendant that gives rise to the complaint, that the plaintiff did not file suit despite having knowledge of the defendant's conduct and the opportunity to file suit, lack of knowledge by the defendant that the plaintiff will assert the right on which he basis his suit, and prejudice to the defendant. *Van Meter v. Kelsey*, 91 So. 2d 327 (Fla. 1956).

In *Batiste v. City of New Haven*, 239 F. Supp. 2d 213 (D. Conn. 2002), residents of a predominantly African-American and Hispanic neighborhood opposed a school construction program which called for the displacement of scores of residents and the destruction of

CASE NO. 6:09-cv-769-ORL-22KRS

numerous homes. *Id*. at 215. Residents, former residents and local businesses displaced under the construction project filed claims under the Federal Fair Housing Act and 42 U.S.C §1983 alleging that construction displaced them in a discriminatory manner when more suitable sites would have displaced significantly fewer residents. *Id*. at 215-217. The Plaintiffs became aware that they were going to be displaced from their homes in August of 2000. *Id*. at 225. Despite protesting against the construction plans through "public opposition," plaintiffs did not file suit until June 2002. *Id*. at 225. Defendants asserted that the plaintiffs were estopped from bringing claims for equitable relief under the Federal Fair Housing Act pursuant to the doctrine of laches, arguing that plaintiffs waited an unreasonable amount of time to file suit. *Id*. at 224. The court agreed, holding that laches barred plaintiffs' Federal Fair Housing Act claim. *Id*. at 227. In examining the elements required to assert the laches defense, the court reasoned that, "[p]rejudice may be found if it would be inequitable in light of some change in defendants' position to permit plaintiffs' claim to be enforced." *Id*. at 225 (citing *Stone v. Williams*, 873 F. 2d 620 (2d Cir. N.Y. 1989) *vacated by Stone v. Williams*, 891 F. 2d 401 (2d Cir. 1989)). The court found that because plaintiffs did not offer an excuse for the delay in filing suit, defendants needed to show little prejudice. *Id*. Further, the court found that the defendants had been prejudiced by spending much time, energy and expense on the project. *Id*. at 226.

In this case, Plaintiffs' claims should be barred under the doctrine of laches due to their unreasonable delay in filing this suit after Defendant changed its legal position by entering into the Development Agreement in 2007. Plaintiffs were aware of the owner-occupied use condition in January 2004 when the Resolution was passed at the City Council

CASE NO. 6:09-cv-769-ORL-22KRS

meeting.  Plaintiffs did not appeal the passage of the Resolution or file any claim within a reasonable time, despite having all of the facts necessary to file an appeal or civil claim based upon the passage of the Resolution.  Plaintiffs' prior counsel, Matthew Smith, Esq., raised the issue of a possible Fair Housing Act violation at the City Council meeting in January 2004 as discussed *supra*.  Regardless of having knowledge of the facts necessary to file a claim, Plaintiffs, through Mr. Smith, drafted a Development Agreement which incorporated the owner-occupied use condition by reference.  Covington Club Partners then entered into the Development Agreement with Defendant in 2007.  Plaintiffs did not file suit in this case until 2009.  Such acts on the part of Plaintiffs constitute an unreasonable delay in filing suit due to a lack of diligence in pursuing a claim.  This unreasonable delay in filing the instant action has prejudiced Defendant, which changed its legal position by entering into the Development Agreement, thus binding Defendant with respect to the development of the subject property.  Defendant had no knowledge that Plaintiffs would seek to assert their rights under the Federal and Florida Fair Housing Acts because Covington Club Partners entered into the Development Agreement in 2007.  Defendant has taken steps in furtherance of the development of this project since 2003, culminating in the Development Agreement, which Plaintiffs now seek to void in part.  Because Plaintiffs unreasonably delayed filing this action, despite their knowledge and opportunity to file a claim as early as 2004, and because Defendant has been prejudiced by Plaintiffs' failure to file their claims, the Court should bar Counts I through IV of the Complaint under the Doctrine of Laches.

CASE NO. 6:09-cv-769-ORL-22KRS

D.    **Counts I through IV of the Complaint Are Barred Pursuant to the Applicable Statutes of Limitation**

The civil action authorized by § 3613 of the Federal Fair Housing Act must be commenced not later than two years after "the occurrence or the termination of an alleged discriminatory housing practice." *See generally* Robert G. Schwemm, *Housing Discrimination: Law and Litigation* § 25:2 (2008) (citing 42 U.S.C.A. 3613(a)(1)(A) and discussing the statute of limitations and citing relevant authority). In the case at bar, the alleged discriminatory act at issue is the City Council's passage of the Resolution containing the owner-occupied use restriction on January 5, 2004. This alleged discriminatory act occurred more than two years before Plaintiffs commenced this civil action by filing their original Complaint [Doc. 1] on May 5, 2009. Therefore, Counts I and III of Plaintiffs' Complaint are barred by the applicable statute of limitations, 42 U.S.C. §3613(a)(1)(A).

Defendant anticipates that Plaintiffs will dispute the date upon which the statute of limitations began to run, and argue that the Court should apply the "continuing violation theory" to this case based upon the Supreme Court's holding in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982). In *Havens,* the Supreme Court held that, "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice." *See id.*[3]

---

[3] The Fair Housing Act's limitations period was 180 days when *Havens* was decided.

CASE NO. 6:09-cv-769-ORL-22KRS

Since *Havens*, a number of lower courts have upheld Fair Housing Act claims based on the continuing violation theory.   *See generally* Robert G. Schwemm, *Housing Discrimination: Law and Litigation* § 25:2 (2008) (citing 42 U.S.C.A. 3613(a)(1)(A) and discussing the statute of limitations and citing relevant authority).  Other decisions have held that this theory does not apply to the particular facts presented.  *Id.*  Even in cases where the continuing violation theory does apply, the theory requires continuing unlawful acts and not merely continuing consequences of an old violation.  *Id.*

The continuing violation theory does not apply to the facts of this case.  *See Hawkins v. Hamlet, Ltd.*, 296 Fed.Appx. 918 (11th Cir. 2008).  In *Hawkins,* the Eleventh Circuit upheld the District Court's ruling that a plaintiff's claim under the Federal Fair Housing Act was barred for failing to bring her refusal to rent claim within two years.  *Id.* at 920.  When the plaintiff asserted that the "continuing violations doctrine" precluded barring her claim, the Eleventh Circuit held that the trial court did not err in refusing to apply the continuing violation doctrine.  *Id.*  Citing *Roberts v. Gadsden Mem. Hosp.*, 850 F. 2d 1549 (11th Cir. 1988), a Title VII case, the Court stated. "a claim arising out of an injury that is continuing only because a putative plaintiff knowingly fails to seek relief is exactly the sort of relief that Congress intended to bar…"  *Id.* at 920.

Similarly, in *Beaulialice v. Federal Home Loan Mortg. Corp.*, 2007 WL 744646 (M.D. Fla.), the Court held that a plaintiff's Fair Housing Act claims were time barred under the two-year statute of limitations despite the continuing violation doctrine.  The court cited *Hipp v. Liberty Nat Life Ins. Co.*, 252 F. 3d 1208, 1222 (11th Cir. 2001) and stated, "the continuing violation doctrine is premised on the equitable notion that the statute of

CASE NO. 6:09-cv-769-ORL-22KRS

limitations ought not to begin until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated…If an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the requirement of filing suit with respect to that event or series of events." *See also Hous. Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condo. Assoc.*, No. 06-20129, 2007 U.S. Dist. Lexis 1911 at *16-17 (S.D. Fla. Jan 10, 2007 (refusing to apply the continuing violation doctrine and dismissing plaintiff's Fair Housing Act claims because a reasonably prudent person in her position would know that she had a cause of action against defendants when she filed a related fair housing complaint against them, long before filing the instant suit).

In this case, the Court should refuse to apply the continuing violation theory because, in reality, Plaintiffs challenge just one incident of conduct allegedly violative of the Fair Housing Act, the passage of the Resolution containing the owner-occupied use condition, rather than an unlawful practice that continued into the limitations period.  In other words, the alleged discriminatory act at issue is the singular act of passing the Resolution containing the owner-occupied use condition in January 2004, rather than an ongoing or continuing policy or practice of the City of Oviedo.

Although Plaintiffs may contend that there are continuing unlawful acts by the City of Oviedo at issue in this case, such as the City of Oviedo's entry into the Development Agreement in July 2007 and the City of Oviedo's alleged refusal to remove the owner-occupied use condition from the Resolution and Development Agreement in 2009 based

CASE NO. 6:09-cv-769-ORL-22KRS

upon Plaintiffs' counsel's letter request, these arguments are red herrings.  The real conduct at issue is the passage of the Resolution in 2004.  The incorporation by reference of the Resolution into the Development Agreement drafted by Mr. Smith was not a separate act on the part of the City of Oviedo, but, rather, a consequence of the passage of the Resolution in January 2004.  The Development Agreement and the alleged refusal to remove the owner-occupied use condition based upon Plaintiffs' 2009 letter request, after Plaintiffs failed to avail themselves of the appellate process in 2004, or other available administrative remedies between 2004 and 2009, are ongoing consequences of the passage of the Resolution in 2004, rather than separate and continuing allegedly discriminatory acts.  In such circumstances, the continuing violation theory should not be applied. The continuing violation theory requires continuing unlawful acts, rather than ongoing consequences of an old violation.  *See generally* Robert G. Schwemm, *Housing Discrimination:  Law and Litigation* § 25:2 (2008) (citing 42 U.S.C.A. 3613(a)(1)(A) and discussing the statute of limitations and citing relevant authority).

Moreover, like the claims at issue in *Hawkins and Roberts,* Plaintiffs' claims in this case are precisely the types of claims Congress intended to bar.  Like the Plaintiffs' alleged injuries in *Hawkins* and *Roberts*, Plaintiffs' alleged injury in this case, namely their alleged inability to develop affordable rental housing at the subject site, is continuing only because Plaintiffs knowingly failed to seek relief for that alleged injury between 2004 and the date they filed their original Complaint in 2009.  Plaintiffs' alleged injury, therefore, is to a significant extent self-imposed.  As discussed *supra*, Plaintiffs failed to appeal the passage of the Resolution and knowingly, voluntarily and intentionally entered into the Development

CASE NO. 6:09-cv-769-ORL-22KRS

Agreement which incorporated the very condition of which Plaintiffs now complain by reference. Mr. Smith cited the Fair Housing Act to the City Council at the meeting on January 5, 2004. Therefore, the facts supportive of Plaintiffs' cause of action under the Federal Fair Housing Act were or should have been known to Mr. Smith and Plaintiffs within two years after the City of Oviedo passed the Resolution containing the owner-occupied use condition on January 5, 2004. Thus, Plaintiffs should not be allowed to rely upon the continuing violation doctrine to overcome the requirement of filing suit within 2 years after the passage of the Resolution. Like the lower Court in *Hawkins,* this Court should refuse to apply the continuing violation doctrine in the case at bar.

Plaintiffs' Florida Fair Housing Act claims alleged in Counts II and IV of the Complaint are barred pursuant to the applicable two year statute of limitations, §760.35(1), Fla. Stat., for these same reasons.[4]

**E.     To the Extent That Plaintiffs Allege a Disparate Impact Claim in Counts I through IV of the Complaint, Defendant Is Entitled to Judgment in its Favor as a Matter of Law.**

In Counts I through IV of their Complaint, Plaintiffs purport to allege violations of the Federal and Florida Fair Housing Acts not only based upon intentional discrimination but also based upon the alleged discriminatory effect of the owner-occupied use condition pursuant to the perpetuation of segregation and disparate impact theories. *See* Doc. 51 at ¶¶ 39, 40, 41, 42, 48, 51 and 52. To the extent that Plaintiffs allege violations of the Federal

---

[4]   Given the similarity of language and purpose of the Federal Fair Housing Act and the Florida Fair Housing Act, analysis under the Federal Fair Housing Act applies equally to the Florida Fair Housing Act. *See Hawn v. Shoreline Towers Phase I Condo. Assoc., Inc.*, 2009 WL 691378 (N.D. Fla. Mar. 12, 2009) (citing *Dornbach v. Holley*, 854 So. 2d 211, 213 (Fla. 2d DCA 2002)).

CASE NO. 6:09-cv-769-ORL-22KRS

and Florida Fair Housing Acts pursuant to a disparate impact theory, Defendant is entitled to judgment in its favor as a matter of law.

In a disparate impact claim, "[t]he relevant question…is whether a policy, procedure or practice specifically identified by the plaintiff has a significantly greater discriminatory impact on members of a protected class." *See generally* Robert G. Schwemm, *Housing Discrimination: Law and Litigation* § 10:6 (2008) (discussing the disparate impact theory and citing relevant authority, including *Simms v. First Gibraltar Bank,* 83 F.3d 1546, 1555 (5th Cir. 1996); *2922 Sherman Ave. Tenants' Ass'n v. District of Columbia,* 444 F.3d 673, 680-81 (D.C. Cir. 2006); *Tsombanidis v. West Haven Fire Dept.,* 352 F.3d 565, 574-75 (2d Cir. 2003); *Oti Kaga, Inc. v. South Dakota Housing Dev. Auth.*, 342 F.3d 871, 883 (8th Cir. 2003); *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington*, 316 F.3d 357, 366 (2d Cir. 2003); *Hack v. President and Fellows of Yale College*, 237 F.3d 81, 90-91 (2d Cir. 2000) *abrogated on other grounds by Swierkiewicz* 534 U.S. 506; and *Pfaff v. U.S. Dept. of Hous. and Urban Dev.*, 88 F.3d 739, 745 (9th Cir. 1996)).   In this case, however, Plaintiffs' disparate impact claims are based upon a single act or decision of the City Council applicable only to Plaintiffs, rather than a generally applicable policy, procedure or practice of Defendant.  The act which Plaintiffs allege violates the Federal Fair Housing Act is the inclusion of the owner-occupied use condition in the Resolution.  The inclusion of the owner-occupied use condition in the Resolution was a singular act, rather than a policy, procedure or practice.  The inclusion of the condition, indeed, was an act of the Plaintiffs just as much as an act of the City Council.  The Plaintiffs sought approval of a mixed use development with commercial and multi-family components pursuant to a negotiated zoning district, and

- 19 -

received, and agreed to, that which was approved, with their agreement, during the course of the land development review and approval process.

The disparate impact theory is not appropriate for claims, such as the claims Plaintiffs purport to allege in Counts I through IV of their Complaint, that are based on a single act or decision that is alleged to be discriminatory.  *See generally* Robert G. Schwemm, *Housing Discrimination:  Law and Litigation* § 10:6 (2008) (discussing the disparate impact theory and citing relevant authority, including *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 53 (2d Cir. 2002); *Simms*, 83 F.3d at 1555; *Ventura Village, Inc. v. City of Minneapolis*, 318 F. Supp. 2d 822, 827-28 (D. Minn. 2004); *Marbly v. Home Prop. of New York*, 205 F. Supp. 2d 736, 743-44 (E.D. Mich. 2002)).  Disparate impact analysis is limited to those cases where, unlike in the case at bar, a defendant's generally applicable policy or practice is being challenged.  *See id.*

In *Ventura Village,* a non-profit organization dedicated to helping low and moderate income families achieve self-sufficiency ("PPL") planned to build a twenty-unit supportive housing facility in the Ventura Village neighborhood to provide permanent homes for homeless families with one or more members with a disability.  *Ventura Village,* 318 F. Supp. at 824.  Pursuant to the city zoning regulations in place, new supportive housing was not permitted due to the presence of nine already existing supportive housing facilities operating within a quarter mile of PPL's proposed site.  *Id.*  PPL applied to the city planning department for a variance and a conditional use permit which was granted by the city council.  *Id.* at 824-25.  Residents of the Ventura Village and a local business then filed suit against the city under the FHA claiming that their rights were violated under the Due Process and

CASE NO. 6:09-cv-769-ORL-22KRS

Equal Protection clauses of the Fourteenth Amendment because the City allegedly sought to concentrate supportive housing in Ventura Village, leading to racial segregation of handicapped persons and people of color.  *Id.* at 825.  Under the plaintiffs' claim for racial discrimination under the Federal Fair Housing Act, they contended that because the supportive housing residents would consist of disabled African-Americans, the City's policy of concentration disparately impacted people of color in Ventura Village by creating residential segregation.  *Id.*

In analyzing the Federal Fair Housing Act claims for racial discrimination, the court stated that, "In a disparate impact case, the court first examines whether the plaintiff has established a prima facia case by showing that (1) the defendant maintains a facially neutral policy or practice which (2) has a significant adverse impact on members of a protected minority group."  *Ventura Village*, 318 F. Supp. at 827.  The court held that the plaintiffs failed to establish both elements of their prima facie case because plaintiffs did not show that the city maintained a particular policy or practice with respect to supportive housing.  *Id.* The plaintiffs' disparate impact claim failed because the city did not announce or establish a generally applicable policy with respect to the siting of supportive housing.  *Id.*  The court reasoned that the plaintiffs could not "convert their singular disappointment into a disparate impact claim without discussing how their case fits within the context of the city's other zoning decisions."  *Id.*

Similarly, in *City of Middleton*, a community action program sued a municipality under the Fair Housing Act after the municipality denied its application for a special use permit to construct a halfway house.  *City of Middleton*, 294 F.3d at 44.  In examining the

- 21 -

CASE NO. 6:09-cv-769-ORL-22KRS

disparate impact claim under the Fair Housing Act, the court stated that, "[a] disparate impact analysis examines a facially-neutral policy or practice, such as a hiring test or zoning law, for its disparate impact on a particular group." *Id.* at 52 (citing *Huntington Branch, NAACP*, 844 F.2d at 933). The court reasoned that where a plaintiff challenges a specific governmental act, "[n]o comparison of the act's disparate impact on different groups of people is possible." Therefore, because the plaintiffs challenged the discrete act of the municipality denying the special use permit, the court held that the plaintiffs had failed to establish a disparate impact claim. *Id.* at 53.

In this case, as in *Ventura Village* and *City of Middleton*, Plaintiffs challenge a specific governmental act applicable only to Plaintiffs, namely the inclusion of the owner-occupied use condition in the Resolution, rather than a facially-neutral policy or practice of the City of Oviedo. Plaintiffs may argue that because Covington Club's residents would likely consist of a certain percentage of racial minorities, the owner-occupied use condition disparately impacts racial minorities. However, a similar argument was rejected by the Court in *Ventura Village* and should be rejected here.

In any event, the inclusion of the owner-occupied condition was agreed upon by the Plaintiffs as they pursued approval of a mixed use development with commercial and multi-family components and a negotiated zoning district. The owner-occupied condition resulted from their agreement during the course of the normative land development review and approval process.

Defendant anticipates that Plaintiffs will rely upon *Hallmark Developers, Inc. v. Fulton County*, 466 F. 3d 1276 (11th Cir. 2006) in support of their position that the owner-

occupied use condition is susceptible to a disparate impact analysis.  However, the facts of this case are distinguishable from the facts at issue in *Hallmark*.  In *Hallmark*, a generally applicable zoning ordinance was at issue.  The plaintiffs brought Fair Housing Act claims after their application for rezoning was denied.  *See Hallmark*, 466 F. 3d at 1280.  In this case, however, no generally applicable zoning ordinance is at issue.  At issue in this case is a land use condition contained in the Resolution and Development Agreement which are applicable only to Plaintiffs as the Plaintiffs pursued, and were successful in achieving, a negotiated zoning district which allowed them to develop a mixed use development.  Thus, to the extent that Plaintiffs allege a violation of the Federal and Florida Fair Housing Acts based upon a disparate impact theory in Counts I through IV of the Complaint, Defendant is entitled to summary final judgment in its favor as a matter of law.

**F.     CPG lacks standing under the Federal and Florida Fair Housing Acts**

Defendant is entitled to summary final judgment in its favor as a matter of law with respect to the Federal and Florida Fair Housing Act claims alleged by CPG because CPG lacks standing under the Federal and Florida Fair Housing Acts.  In order to have standing to sue under the Federal Fair Housing Act, a plaintiff must allege a distinct and palpable injury. *See generally* Robert G. Schwemm, *Housing Discrimination:  Law and Litigation* § 12A:3 (2008) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1983)).  A plaintiff personally must have suffered some actual or threatened injury that is caused by or fairly traced to the defendant's challenged action and that is likely to be redressed by a favorable court decision. *See id. (*citing *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.*,  454 U.S. 464, 472 (1982); *Jackson v. Okaloosa County*, Fla., 21 F.

CASE NO. 6:09-cv-769-ORL-22KRS

3d 1531, 1537 (11th Cir. 1994)).  *See also Baytree Inverrary Realty Partners v. City of Lauderhill*, 873 F. 2d 1407, 1408 (11th Cir. 1989).

CPG was a stranger to the proceedings in 2003 and 2004.  Moreover, CPG has not and cannot show that it suffered any actual or threatened injury as a result of the passage of the Resolution.  In their Complaint Plaintiffs allege only that CPG serves as a general contractor for the construction of Covington Club.  *See* Doc. 51 at ¶10.  The work of a general contractor on a particular housing development is not affected by whether the ultimate occupants of the housing development will be renters or owners.  Therefore, in the absence of an actual or threatened injury caused by the owner-occupied use condition, CPG lacks standing to sue under the Federal or Florida Fair Housing Acts.

## III.  CONCLUSION

In sum, the inclusion of the owner-occupied land use condition that is the subject of this litigation was an act of the Plaintiffs just as much as an act of the City Council.  The Plaintiffs sought approval of a negotiated zoning district in order to develop a mixed use development with both commercial and multi-family components.  Their application was approved and the Plaintiffs received and agreed to development entitlements in the course of the land development review and approval process that they elected to pursue.  For these reasons, as well as the reasons discussed above, Plaintiffs' Federal and Florida Fair Housing Act claims should be barred pursuant to the Doctrines of Waiver, Equitable Estoppel, and/or Laches.  Furthermore, Plaintiffs' Federal and Florida Fair Housing Act claims are barred by the applicable statutes of limitation.  There are no genuine issues of material fact, and

CASE NO. 6:09-cv-769-ORL-22KRS

Defendant, City of Oviedo, is entitled to summary final judgment in its favor and against Plaintiffs as a matter of law.

WHEREFORE, for all of the foregoing reasons, Defendant, City of Oviedo, requests this Court to enter an Order granting Summary Final Judgment in its favor and against Plaintiffs, granting Defendant reasonable attorneys' fees and costs associated with the defense of this action, and granting Defendant any further relief this Court deems just and proper.

Respectfully submitted this 22nd day of December, 2009.

> **s/Richards H. Ford** _____
> Richards H. Ford
> Florida Bar No. 0288391
> rford@wickersmith.com
> Patrick M. DeLong
> Florida Bar No. 0982415
> pdelong@wickersmith.com
> Attorneys for Defendant, City of Oviedo
> WICKER, SMITH, O'HARA, McCOY &
> FORD, P.A.
> Post Office Box 2753
> Orlando, FL 32802-2753
> Phone: (407) 843-3939
> Fax: (407) 649-8118

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 22, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

> **s/Richards H. Ford** _____
> Richards H. Ford