**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**ATLANTIC HOUSING PARTNERS,
LLLP, COVINGTON CLUB, LLLP, and
CPG CONSTRUCTION, LLLP,**

      **Plaintiffs,**

**-vs-**                 **Case No. 6:09-cv-769-Orl-22KRS**

**CITY OF OVIEDO,**

      **Defendant.**
_____

## ORDER

### I. INTRODUCTION

  The plaintiffs in this housing discrimination case desire to develop an affordable housing project, known as Covington Club, within the City of Oviedo. They contend that the City has discriminated against them by passing a resolution restricting the units in Covington Club to townhouses, condominiums or other owner-occupied housing. In other words, Plaintiffs complain that the resolution prevents them from developing Covington Club as rental property. They claim this results in housing discrimination against potential minority tenants.

  In their Third Amended Complaint, Plaintiffs assert violations of the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.,* (Counts I and III), and the Florida Fair Housing Act, Fla. Stat. § 760.20 *et seq.*, (Counts II and IV). The City seeks summary judgment on numerous grounds. After carefully considering the parties' submissions, the Court determines that the City is entitled to summary judgment on the basis that the Plaintiffs have waived their fair housing claims.

## II. BACKGROUND

Plaintiff Atlantic Housing Partners, L.L.L.P. ("Atlantic Housing") "develops multi-family affordable housing communities throughout Florida[.]" (Third Amended Complaint ("TAC") (Doc. No. 51) ¶ 7.) Atlantic Housing "endeavors to develop a 104-unit multi-family affordable housing community" - Covington Club - within the City of Oviedo. (TAC ¶ 8.) The property on which the development is to be built is owned by co-Plaintiff Covington Club, L.L.L.P. ("Covington Club Partners"). (TAC ¶ 9.) The remaining Plaintiff, CPG Construction, L.L.L.P. ("CPG"), is the general contractor for the project. (TAC ¶ 10.) In their legal memorandum opposing the City's summary judgment motion, Plaintiffs characterize themselves as "affiliates" who "work together to develop multi-family affordable housing communities throughout Florida that serve minority populations with incomes below the median income of a given area." (Doc. No. 57 p. 3.) According to Plaintiffs' representative, W. Scott Culp, the Plaintiffs "are owned or controlled by common principals." (Declaration of W. Scott Culp (Doc. No. 57-1) ¶ 6.)

The owner-occupied restriction arose during a December 18, 2003 public meeting of the City's Land Planning Agency. Matthew S. Smith, a land-use and real estate lawyer, represented Covington Club Partners at that meeting. (Land Planning Agency Minutes (Doc. No. 54-1) p. 2.) After hearing from Smith, planning staff, and members of the public, the agency passed a motion recommending approval to the city council of the Covington Club development, subject to a number of conditions. (*Id.* at pp. 2-5.) One of the conditions was that "[t]he development should be limited to townhouses or something that is ownership oriented." (*Id.* at 5.)[1]

---

[1] The minutes of the Land Planning Agency meeting reflect that Smith agreed to this condition. (Doc. No. 54-1 at p. 4.) Nevertheless, in an affidavit opposing the City's summary judgment motion,

On January 5, 2004, the Oviedo City Council conducted a public meeting regarding the project. Once again, attorney Matthew Smith appeared on behalf of Covington Club Partners. The council considered a proposed resolution - No. 776-04 - regarding the Covington Club project. As proposed, the resolution contained a condition, known as Condition No. 9, which provided: "Permissible uses within the multifamily land use shall be limited to townhouses, condominiums, or other owner-occupied housing." (Transcript of City Council Meeting (Doc. No. 54-4) at p. 58.) Smith gave a presentation at the city council meeting and, among other things, urged the council to eliminate Condition No. 9. (*Id.* at pp. 6, 9-11, 49-51, 54, 86-87.) One of the points Smith raised was that Condition No. 9 might violate the Fair Housing Act. (*Id.* at 50-51.)[2] The council declined Plaintiffs' request to remove Condition No. 9 and passed a version of the resolution containing that condition.

Three-and-a-half years later, in July of 2007, the City and Covington Club Partners entered into a Development Agreement regarding the Covington Club project. (Doc. No. 54-6.)[3] On its face, the document recites that it was prepared by Matthew S. Smith. (*Id.* at p. 1.) Of critical importance

---

W. Scott Culp claims that "PLAINTIFFS did not agree to the inclusion of an 'owner-oriented' or 'owner-occupied' restriction in the Covington Club Resolution at the LPA Approval Meeting." (Declaration of W. Scott Culp (Doc. No. 57-1) ¶ 17.) The Court need not resolve this conflict in order to decide the summary judgment motion.

[2]Specifically, Smith stated: "Frankly, [prohibiting apartments] may be contrary to the Fair Housing Act. I haven't researched, I think it's the Civil Rights Act of 1968. I have not researched that. I'm not prepared to speak intelligently about that tonight. But we are talking about a potentially discriminatory act that really is beyond the scope of this." (Transcript of City Council Meeting (Doc. No. 54-4) at pp. 50-51.)

[3]An entity named "Dikeou Realty, LLC" was also a party to the Development Agreement. The document identified Dikeou Realty and Covington Club Partners, collectively, as the "Developer." (Doc. No. 54-6.)

-3-

for present purposes, the third "Whereas" clause of the agreement expressly incorporates by reference the terms of Resolution 776-04. (*Id.*) In that regard, the document states:

> WHEREAS, at its regularly scheduled meeting on January 5, 2004, the City Council of the City of Oviedo approved Resolution 776-04, approving the Covington Club PUD Conceptual Development Plan, as amended by Resolution 1264-06, approving the amendment to Covington Club PUD Conceptual Development Plan, both of which are incorporated herein by this reference (collectively, hereinafter referred to as the "CDP")[.]

(*Id.*)[4] Consistent with Condition No. 9, the Development Agreement repeatedly refers to the planned residential units as "townhouses" and "townhomes," rather than apartments or rental units. (*Id.* at pp. 1, 2, 3, 5 & 12.) Additionally, the document states that the Development Agreement's terms and conditions shall be binding on the parties' successors-in-interest and "shall be binding upon the Property and shall run with title to the same." (*Id.* § XIII p. 14.)

Notwithstanding the foregoing provisions in the Development Agreement, on April 13, 2009, a different lawyer (not Matthew Smith) wrote the City a letter on behalf of Atlantic Housing and Covington Club, formally requesting removal of Condition No. 9 from Resolution 776-04. (Doc. No. 57-7.) Therein, Plaintiffs' counsel argued that Condition No. 9 violated the federal Fair Housing Act, the Florida fair housing statute, and due process and equal protection guarantees of the U.S. and Florida Constitutions. (*Id.*) Plaintiffs' attorney also asserted that Condition No. 9 made development of the Covington Club project economically unfeasible. (*Id.*) The letter closed by requesting that the City schedule the matter for a hearing before the city council at its next meeting. (*Id.*)

---

[4]Apparently, the second resolution referenced in the quoted paragraph - Resolution 1264-06 - approved the Development Agreement. (*See* Doc. No. 57-7 at p. 2.).

By letter dated April 30, 2009, the City rejected Plaintiffs' request. (Doc. No. 57-8.) In that letter, the City's attorney stated:

> I am advising the City that the Council not place your request on the agenda. The time for your client to appeal the land use decision was in 2004. Your client further consented to the conditions (including condition 9) when they negotiated the Development Agreement in 2006 and then signed the Development Agreement in 2007. I see no advantage to the City to bring this matter to a public meeting, and quite the contrary, believe it to be detrimental for the City to have a meeting should your client decide to ultimately file a lawsuit.

(*Id.*)

This lawsuit ensued.

### III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U. S. Steel & Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds,* 30 F.3d 1347 (11th Cir. 1994)). "There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen*, 83 F.3d at 1349. The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

## IV. ANALYSIS

In seeking summary judgment, the City raises a host of arguments. In the Court's view, one issue looms largest and is completely determinative: whether the Plaintiffs waived their fair housing rights by entering into the Development Agreement incorporating the limitation contained in Condition No. 9.[5]

Fair housing rights can be waived. *Housing Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condo. Ass'n,* 510 F. Supp. 2d 1003, 1009 (S.D. Fla. 2007).[6] To be effective, the waiver must be knowing and intentional. *Id.* Mere awareness of a potentially illegal housing restriction does not alone constitute waiver. *Id.* at 1010.

It is plain to the Court as a matter of law that Plaintiffs waived their right to complain of Condition No. 9.[7] Plaintiffs assert that execution of the Development Agreement "constitute[d] only

---

[5]The City also contends Plaintiffs waived their fair housing rights based on attorney Matthew Smith's apparent agreement to the owner-occupied restriction at the Land Planning Agency meeting and by virtue of Plaintiffs' decision not to appeal the passage of Resolution 776-04. Given its waiver ruling based on the Development Agreement, the Court need not reach these arguments. Similarly, it is not necessary for the Court to consider the other summary judgment arguments the City raises. However, based on CPG's allegation of lost profits attributable to Condition No. 9, (Culp Decl. ¶ 38), the Court rejects the City's argument that CPG lacks standing.

[6]Plaintiffs concede that the same legal analysis applies to their state and federal fair housing claims. (Doc. No. 57 at 2 n.1.)

[7]Plaintiffs do not argue that they should be treated separately for the purpose of waiver analysis. To the contrary, they and the City treat Plaintiffs as a single unit for waiver purposes. In fact, in their legal memorandum opposing the City's summary judgment motion, Plaintiffs state that Covington Club Partners entered into the development agreement with the City "on behalf of Plaintiffs[.]" (Doc. No. 57 p. 5.) W. Scott Culp says the same thing in his declaration opposing the City's summary judgment motion. (*See* Doc. No. 57-1 ¶ 28.) Accordingly, just as the parties have done, the Court considers all Plaintiffs bound by the Development Agreement. Even if Atlantic Housing and CPG, as non-signatories to the Development Agreement, were not bound by the agreement, it is difficult to envision how they could impose fair housing liability on the City

knowledge, which is an insufficient basis for a waiver defense." (Doc. No. 57 at 9.) That argument is specious. By executing the agreement, Covington Club Partners did not merely acknowledge Condition No. 9, it incorporated that condition into the parties' agreement. In other words, the parties adopted the restrictions contained in the resolution - including Condition No. 9 - and imposed those conditions on themselves via their own agreement. To state the obvious, they *agreed* to the condition. Further, the transcript of the January 5, 2004 city council meeting makes abundantly clear that Matthew Smith, as Plaintiffs' legal representative, was quite aware that Condition No. 9 might violate fair housing laws; he told the council so. To make matters worse for Plaintiffs, the Development Agreement was drafted by their own attorney. Hence, they can hardly claim to have been misled by the City regarding the contents of the agreement.

Plaintiffs offer a number of excuses for their decision to enter into the Development Agreement. They say they were "trying to make the best of the situation," they had "no other viable options available," and they had "the expectation that [they] would be able to remove Condition No. 9 through negotiation or this [lawsuit]." (Culp Decl. ¶ 28.) More dramatically, in their opposition memorandum, Plaintiffs contend they signed the Development Agreement "with the proverbial gun to their head and with [the] expectation that Plaintiffs would be able to remove Condition No. 9 through negotiation[.] " (Doc. No. 57 at p. 5; *see also id.* at p. 8 (reiterating the "gun to the head" analogy).) Hyperbole aside, Plaintiffs cannot simply ignore the fact that they had a choice: they could choose to execute the Development Agreement incorporating Condition No. 9, or they could choose

---

considering that Covington Club Partners *is* bound by Condition No. 9 and therefore cannot develop the project as rental property.

not to. They chose the former course. They gambled that they would be able to negotiate away Condition No. 9, but they failed in that effort. As ensuing events demonstrate, the time for negotiation was before they signed the agreement, not afterwards. When the dust cleared, the parties were left with their agreement. Plaintiffs cannot simply go back on their word by saying, "I didn't really mean it." They cannot agree to something then reverse course and sue the City for holding them to their agreement.[8] To support their position, Plaintiffs rely on a number of cases, all of which are inapposite. The previously-cited *Housing Opportunities,* 510 F. Supp. 2d 1003, involved plainly distinguishable facts. There is no indication that the plaintiffs in *Housing Opportunities* ever signed a written contract incorporating the restriction they later claimed constituted a fair housing violation. *Housing Opportunities,* unlike this case, involved mere knowledge of the potentially illegal housing restriction rather than actual agreement to it. For that reason, the district court denied the defendant's motion to dismiss regarding the waiver issue. 510 F. Supp. 2d at 1010.

*Gonzalez v. County of Hidalgo, Texas*, 489 F.2d 1043 (5th Cir. 1973), is also inapposite. In the first place, *Gonzalez* was not a fair housing act case; rather, it involved a procedural due process claim. Moreover, *Gonzalez* addressed a landlord-tenant situation involving unequal bargaining power. There, the plaintiff's husband, a poor, uneducated, migrant worker who spoke little English, was not represented by counsel when he executed a lease that constituted a contract of adhesion, and there was no evidence that the plaintiff or her husband were actually aware of the significance of the

---

[8]In his declaration, W. Scott Culp states: "At no time did any of the PLAINTIFFS intentionally and knowingly waive their rights under the Federal and Florida Fair Housing Acts to file a private cause of action against the City of Oviedo for the unlawful requirement and imposition of Condition No. 9." (Culp. Decl. ¶ 34.) This statement amounts to no more than a bare legal conclusion; it is therefore insufficient to create a genuine issue of material fact.

waiver provision. 489 F.2d at 1046-50. The issue on appeal was whether the plaintiff's spouse had voluntarily, intelligently and knowingly waived certain procedural due process rights. *Id.* at 1046. The Fifth Circuit's analysis was obviously driven by the consumer setting and its attendant policy considerations. In contrast, the Plaintiffs in the case at bar are commercial entities who were represented by counsel when they waived their rights. Ultimately, the appellate court remanded *Gonzalez* to the district court for a determination regarding waiver. *Id.* at 1052. Apart from repeating the well-settled legal principle that a waiver of a constitutional right must be knowing, intelligent and voluntary, nothing in *Gonzalez* aids Plaintiffs here.

Finally, *Simovits v. Chanticleer Condominium Association,* 933 F. Supp. 1394 (N.D. Ill. 1996), is similarly distinguishable. That case, like *Gonzalez*, addressed waiver by individuals. Here, by contrast, the waiving entities were commercial organizations whose attorney drafted the agreement in question. The policy considerations at issue in the two situations are manifestly different. In any event, to the extent *Simovits* suggests that signing an agreement consenting to housing restrictions constitutes mere knowledge of those restrictions, and not waiver, the undersigned judge respectfully declines to follow that reasoning.

In sum, on the present record, as a matter of law, Plaintiffs' waiver was knowing, intelligent, intentional and voluntary. No reasonable fact-finder could conclude otherwise. Indeed, refusing to recognize waiver in this circumstance would eviscerate the doctrine.

## V. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. Defendant City of Oviedo's Amended Motion for Summary Final Judgment (Doc. No. 54), filed on December 22, 2009, is GRANTED insofar as it seeks judgment as a matter of law on the basis of waiver.

2. The Clerk shall enter a final judgment providing that the Plaintiffs, Atlantic Housing Partners, L.L.L.P., Covington Club, L.L.L.P., and CPG Construction, L.L.L.P., shall take nothing on their claims against the Defendant, City of Oviedo. The judgment shall further provided that the Defendant shall recover its costs of action.

3. The Clerk shall close the case.

**DONE** and **ORDERED** in Orlando, Florida on January 21, 2010.

Copies furnished to:

Counsel of Record
Unrepresented Parties

ANNE C. CONWAY
United States District Judge